[Cite as *Hog Heaven of New Philadelphia, Inc. v. M & M W. High Ave., L.L.C.*, 2014-Ohio-5125.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| HOG HEAVEN OF<br>NEW PHILADELPHIA, INC.<br>FKA HOG CITY, LTD | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. Sheila G. Farmer, J.<br>Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | Case No. 2014 AP 02 0006 |
| -vs- | |
| M AND M WEST HIGH AVENUE<br>LLC | O P I N I O N |
| Defendant-Appellant | |

CHARACTER OF PROCEEDING: Appeal from the Tuscarawas County
Common Pleas Court, Case No.
2012 CV 11 1057

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: November 14, 2014

APPEARANCES:

For Plaintiff-Appellee

LEE E. PLAKAS
MARIA C. KLUTINOTY EDWARDS
COLLIN S. WISE
Tzangas Plakas Mannos Ltd.
220 Market Avenue, Eighth Floor
Canton, Ohio 44702

For Defendant-Appellant

MICHAEL C. JOHNSON
Johnson, Urban & Range, Co., LPA
117 South Broadway, P.O. Box 1007
New Philadelphia, Ohio 44663

*Hoffman, P.J.*

{¶1}   Defendant-appellant M & M West High Avenue, LLC appeals the January 23, 2014 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, which granted summary judgment in favor of plaintiff-appellee Hog Heaven of New Philadelphia, Inc. FKA Hog City Ltd.

STATEMENT OF THE FACTS AND CASE

{¶2}   Appellant owns real property located at 1290 West High Avenue, New Philadelphia, Ohio 44663 ("the Premises").  On July 26, 2002, Appellee and Appellant entered into a Lease Agreement with Option to Purchase ("the Lease Option") for the Premises.  Section V of the Lease Option provides Appellee with the option to purchase the Premises during the initial term or any subsequent renewal, and reads:

In consideration of the covenants and conditions hereby established, the parties further agree that at any time during the initial term of the within Lease, or any properly exercised extension periods hereof, Lessee shall have the right and option of purchasing the premises herein leased for an amount as determined by the following procedure:

(A) The parties hereto shall attempt to select a mutually agreed upon MAI appraiser to determine the fair market value of the premises. Said appraiser shall be commissioned by the parties to formulate an opinion regarding the appraised value of the premises. The appraised value as determined by such mutually agreed upon appraiser shall constitute the amount of the purchase price to be paid by Lessee pursuant

to its option to purchase. The costs incurred by said mutually agreed upon appraiser shall be shared equally by the parties; or

(B) In the event that the parties are unable to select a mutually agreeable MAI appraiser pursuant to the term of subparagraph (A), above, then each party shall commission an MAI appraiser of their own choosing who shall formulate written findings concerning the fair market value of the premises. In the event that the appraisals formulated by the two MAI appraisers are within ten percent (10%) of each other, then the difference between said two appraisals shall be split evenly, and the midpoint between said two appraisals shall constitute the purchase price for the premises. In the event that the two appraisals formulated by the two MAI appraisers are not within ten percent (10%) of each other, then the two MAI appraisers shall select a third independent MAI appraiser whose determination regarding fair market value shall be the purchase price paid for the premises. Each party shall assume responsibility for payment of any expenses incurred by their respective MAI appraisers. If applicable, the costs incurred by a third, independent MAI appraiser pursuant to the foregoing shall be shared equally by the parties.

For purposes of the within section pertaining to Lessee's option to purchase, the term "the premises" shall be defined as the real estate, attendant structures, fixtures, and those items of personalty that remain on the premises in the event of termination of the within lease.

Lessee may exercise its option to purchase by providing Lessor of written notice thereof at any time during the pendency of the within lease, or during the period of any extensions hereof. In such case, the appraisal process outlined above shall be completed by the parties within sixty (60) days. In the event that Lessee determines not to exercise its option to purchase following completion of the appraisal process, then Lessee shall bear full responsibility for the MAI appraisal costs incurred pursuant to subparagraphs (A) and (B), above.

Should Lessee determine to exercise its option to purchase the premises, then the sale thereof shall proceed pursuant to the terms and conditions of the Purchase Agreement attached hereto as Appendix B. (Said Appendix B is unsigned and undated; and makes no provision for the purchase price, which shall be determined according to the procedure outlined above).

{¶3} On November 4, 2011, Appellee notified Appellant of its intent to exercise its right to purchase the Premises pursuant to Section V of the Lease Option. Each party obtained an appraisal of the Premises. Because the two appraisals were not within ten percent of each other, Section V required the two appraisers "select a third independent MAI appraiser whose determination regarding fair market value shall be the purchase price paid for the premises." The two appraisers did not select the third appraiser within the sixty-day time frames set forth in Section V.

{¶4} Appellee made efforts to assist in the joint selection of the third appraiser. Appellee proposed a method for the selection process, however, Appellant rejected the

proposal.  In addition to monthly base rent, Appellee also pays Appellant a percentage of its profits as overage rent.  The overage rent represents significant income for Appellant.  Appellee would not have owed any overage rent had the purchase been completed in a timely fashion.

{¶5}   On November 15, 2012, Appellee filed a complaint against Appellant for specific performance, declaratory judgment, unjust enrichment, and breach of contract. Appellee sought equitable relief as well as money damages.  Appellee filed an amended complaint on December 31, 2012. Appellant filed a timely answer to the amended complaint.

{¶6}   On September 13, 2012, upon completion of discovery, Appellee filed a motion for summary judgment.   On January 8, 2014, Appellant filed its own motion for summary judgment as well as a response in opposition to Appellee's motion for summary judgment.   Appellee filed a motion to strike, asking to court to strike Appellant's motion for summary judgment as said motion was filed approximately four months past the dispositive motion deadline.

{¶7}   Via Judgment Entry filed January 23, 2014, the trial court granted Appellee's motion to strike and awarded summary judgment in Appellee's favor.  The trial court ordered specific performance of the Lease Option and instructed the parties to select an appraiser as required by the terms of the Lease Option.  The appraiser's opinion alone would determine the amount which Appellee could pay to purchase the Premises.  The trial court also awarded Appellee a credit for rental payments made to Appellant from January 3, 2012, until the date of the parties' receipt of the third appraisal.

**{¶8}** It is from this judgment entry Appellant appeals, raising as error:

**{¶9}** "I. THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND ISSUING A DECREE OF SPECIFIC PERFORMANCE.

**{¶10}** "II. THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS GENUINE ISSUES OF MATERIAL FACT EXISTED AS WHETHER APPELLANT VIOLATED THE TERMS OF THE LEASE OPTION NECESSITATING A TRIAL ON THE MERITS.

**{¶11}** "III. THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT IN AWARDING APPELLEE A RENT CREDIT FOR BASE AND OVERAGE RENT AGAINST THE PURCHASE PRICE TO BE DETERMINED BY THIRD APPRAISER."

## STANDARD OF REVIEW

**{¶12}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

**{¶13}** Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary

judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

{¶14} It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). The standard for granting summary judgment is delineated in *Dresher v. Burt,* 75 Ohio St.3d 280 at 293, 662 N.E.2d 264 (1996): " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ,* 37 Ohio St.2d 150, 309 N.E.2d 924 (1974).

I, II

{¶15} In its first assignment of error, Appellant contends the trial court erred in granting summary judgment in favor of Appellee and issuing a decree of specific performance.  In its second assignment of error, Appellant argues the trial court erred in granting summary judgment in favor of Appellee as genuine issues of material fact existed as to whether Appellant violated the terms of the Lease Option.  Specifically, Appellant maintains the failure to select the third appraiser was not occasioned by any fault of Appellant or its selected appraiser, but rather was merely the result of the two appraisers reaching an impasse regarding the third appraiser.

{¶16} Specific performance as a remedy for breach of contract is a matter resting in the sound discretion of the court, not arbitrary, but controlled by principles of equity, on full consideration of the circumstances of each particular case. *Roth v. Habansky,* Cuyahoga App. No. 82027, 2003-Ohio-5378. The standard of review in such a case is whether the trial court, sitting as a court of equity, abused its discretion. *Id.,* citing *Manning v. Hamamey* (Feb. 12, 1998), Cuyahoga App. No. 72072.

{¶17} "The remedy of specific performance is governed by the same general rules which control the administration of all other equitable remedies. The right to it depends upon elements, conditions, and incidents which equity regards as essential to the administration of all its peculiar modes of relief. When all these elements, conditions, and incidents exist, the remedial right is perfected in equity. These elements, conditions, and incidents, as collected from the cases, are the following: The contract must be concluded, certain, unambiguous, mutual, and based upon a valuable consideration; it must be perfectly fair in all its parts; it must be free from any

misrepresentation or misapprehension, fraud or mistake, imposition or surprise; it cannot be an unconscionable or hard bargain; its performance must not be oppressive upon the defendant; and, finally, it must be capable of specific execution through a decree of the court." *Id.*

{¶18} The Lease Option sets forth the specific procedure to be followed if the two appraisals were not within ten percent (10%) of each other:

In the event that the two appraisals formulated by the two MAI appraisers are not within ten percent (10%) of each other, then the ***two MAI appraisers shall select a third independent MAI appraiser*** whose determination regarding fair market value shall be the purchase price paid for the premises.

\*\*\*

The appraisal process outlined above shall be completed by the parties within sixty (60) days. (Emphasis added.)

{¶19} Pursuant to this provision, because the appraisals were not within ten percent (10%) of each other, the parties' appraisers, Jeff Smith for Appellee and Charles Snyder for Appellant, were obligated to choose the third appraiser. For whatever reason, Smith and Snyder were unable to agree on a third appraiser within the requisite time frame. Appellee moved the trial court for an order of specific performance. We find the trial court did not abuse its discretion in ordering specific performance – instructing Smith and Snyder to choose the third appraiser – as such remedy was necessary to effectuate the intent of the parties.

{¶20} Appellant also challenges the trial court's finding it breached the Lease Option. Assuming, arguendo, such finding was erroneous, we find such error to be harmless as the trial court's award of specific performance was not predicated upon the breach.

{¶21} Appellant's first and second assignments of error are overruled.

III

{¶22} In its final assignment of error, Appellant submits the trial court erred in granting Appellee's motion for summary judgment and awarding Appellee rent credit against the purchase price to be determined by the third appraiser as set off for base and overage rent paid during the period of the impasse. We disagree.

{¶23} " '[W]hen a decree for specific performance in the sale of real estate is granted to the purchaser he is entitled to be put in the position he would have been in had the contract of sale and purchase been carried out on the date agreed upon.' " *Sandusky Properties v. Aveni* (1984), 15 Ohio St.3d 273, 274, 473 N.E.2d 798 (quoting *Hellkamp v. Boiman* (1970), 25 Ohio App.2d 117, 122, 267 N.E.2d 323).

{¶24} The trial court's award accomplishes this result. Accordingly, we find the trial court did not abuse its discretion by awarding Appellee the rent and overage rent paid during the period of the impasse.

{¶25} Appellant's third assignment of error is overruled.

**{¶26}** Judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Farmer, J.  and

Delaney, J. concur